Good morning. May it please the Court, my name is Mark Wilk for Plaintiff Appellate Farm Workers. In this matter, there are two issues on appeal, minimum wage claim and a late payment of wages claim. I'd like to address the minimum wage claim. I would like to reserve five minutes for the late pay and other matters. The employer's temporary labor can't- I would do that, Your Honor. The temporary labor camps that the employer provides were not furnished for the private benefit of the Arizona migrant workers. The labor housing was required by the employer in order to have the private benefit of the 250 to 350 Arizona migrants that it needed to harvest its fruit. The plain meaning of the Oregon statutory term, private benefit, is that the benefit that is provided belongs to or concerns the workers. But if providing the housing is required to meet the employer's business needs, then it's not for the private benefit of the workers. That's the essence of the rule that the Commissioner of the Bureau of Labor and Industries has adopted, which focuses on the reasons that the housing is being provided. The Commissioner has broad rulemaking authority, has broad authority to interpret and enforce labor laws in Oregon. It has adopted the rule in its current form in 1996. It's a longstanding rule that's not been changed by the legislature. It's a valid interpretation of the statute, and it has the force of law. The Court should defer to the Commissioner's interpretation. And, indeed, the employer doesn't challenge the validity of the rule, which it considers unambiguous. On that point, both parties agree. Under the rule, housing is required if the employer either affirmatively requires it or if it is required for business reasons. The employer's housing is required in this case under two provisions of the rule. 7B prohibits deductions from the minimum wage for expenses of a worker who must travel away from home on the employer's business. All of the workers in this case are Arizona migrant farm workers who must leave their homes in Arizona to come to work temporarily for a month or so for the employer. Where is their home during the picking season? During the picking season, their home is still in Arizona, but they do temporarily reside in the employer's labor camps. Under 7B of the rule ---- They do travel. I suppose the question is, is it must travel? Well, they must travel. It's clear they can't commute back and forth from their homes to pick the fruit. Do you have to win under 7B to win your argument? Or is 7D sufficient? 7D is sufficient, Your Honor. They are alternative arguments. And it provides the larger context for the rule and the fact that the housing is required. So 7D precisely applies because it's clear and unquestionable that this employer needs to provide this housing in order to maintain an adequate workforce at the times and locations that he needs the pickers. The court ---- the district court made specific findings that there are not enough local workers to meet the employer's labor needs, that the employer must actively recruit the farm workers from Arizona to come to Oregon to pick the fruit, that the employer recruits, hires, and houses between 250 and 350 farm workers from Arizona. In order to recruit them, the employer offers housing. All of the named plaintiffs and all or nearly all of the farm workers lived in the employer's housing while they were here. The court also found that it wasn't really practical for the Arizona migrant workers to find other housing, other private housing, during the short time that they were up here. Finally, the court found that the employer utilizes buses to take the workers directly from the housing, from the labor camps, to the various orchards. And beginning in 2006, the employer also used buses to bring them up from Arizona and take them back. So they really had no other place, no other real option but to live in the labor camps. They didn't have their own transportation. And so clearly the housing was necessary. There's no real evidence or dispute that the housing wasn't necessary. The only evidence at all in the record is the testimony of the orchards manager that he had heard generally that some workers stayed with family or friends or found other housing. But that's not really probative. The fact that there might be a few workers that stayed elsewhere does not negate the reality that the employer is required to provide this housing in order to have the 300 or 350 workers that it needs to harvest its fruit. The district court decided that 7D applied as a matter of law only to on-call workers. And we don't dispute, nor does the Commissioner dispute, that it does apply to on-call workers. It's just not limited to on-call workers. By its terms, it's much broader. It applies whenever the housing is required because it's necessary for the employer to have that workforce at the times and places that it needs it. The agency has, the Commissioner has appeared in this action, and the court should defer to its own interpretation of the rule. Under Oregon law, there are two Supreme Court cases that say that the court should defer to a plausible interpretation of the agency's own administrative rule. The first case is Don't Waste Oregon, cited by the amicus, cited by the Commissioner. It's a case actually Judge Graber issued on the Oregon Supreme Court. That was followed two years ago in the Friends of the Gorge case, in which, again, the Oregon Supreme Court upheld the agency's interpretation of the rule. So substantial deference is required. Oregon law really applies the standard, a standard that's different than the federal law. It's a higher standard and one that really focuses on the reasons that the housing is provided. The district court, I think, was a little troubled by the plain meaning of private benefit. It assumed that there would always be a business benefit, and there would always be a business reason for providing housing. And that's not necessarily the case. An arm's-length rental agreement may well be for a worker's private benefit. And that's not to say the employer can't enjoy some incidental benefit, but that's not the reason that the housing is provided. And so as an example, in one of the cases cited by the employer, the Alicia case, the commissioner found that housing in a hotel room that was provided to one of the workers was for that worker's private benefit, because he rented the room prior to the employment relationship, and his living there wasn't required by the employer for any business reasons.   but that's not the case in this case. Do you want to address the late pay issue? Sure. The issue, again, is strictly a legal issue, and that is what is the interpretation of the statutory phrase, whenever the employment terminates? We think the court got it right on this. The court correctly analyzed the statute and the administrative regulation that Boley has adopted, and the term really means no more than when the employment stops, when the work ends. Oregon statutes have very strict time limits for payment of final wages, and with respect to farm workers, they're even more strict. Seasonal farm workers, the legislature has recognized that they work temporarily, and they move from place to place, from job to job, and it requires that they be paid immediately whenever the employment terminates. And that term is used whenever the employment terminates in all the different ways that work might end or that employment might terminate. So, for instance, a worker can quit, and if the worker gives 48 hours' notice, they're required to be paid on the last day they work, when their work ends. If they quit without notice, they're required to be paid within 48 hours of when their work ends, that is, the last day they work. If the termination, if the employment ends by mutual agreement, the workers are required to be paid on the last day they work. If they're discharged, they're required to be paid on the last day they work. BOLI has – BOLI, that is, the Commissioner of the Bureau of Labor and Industries, has recognized this in its administrative rule that says when the employee terminates employment, that is, ends work by reason of discharge, or in this case layoff, the wages must be paid on the last day the employee works. Okay. I think we have your argument in hand. You have about three minutes left. Do you want to reserve? Okay. I would just say that the Court made clear findings as well that these layoffs were planned in advance, that the employer had the ability to pay, and indeed actually cut the checks on the same day as the last day of work, but didn't pay them until the next day. I'll reserve balance. Thank you. May it please the Court, Brenda Baumgart on behalf of Defendants Bear Creek. I'd like to pick up perhaps where Mr. Wilk left off, and that is in talking about the District Court's findings. With regard to the minimum wage question before this Court on plaintiff's appeal,  they are overlooking the specific factual findings that the District Court made. Counsel, I would ask you to think about findings number 20, 23, 24, and 74. And when I read those findings together, it appears to me that the Court is acknowledging that Bear Creek benefits from the housing, and that the point of offering the housing is to facilitate the recruitment from faraway places and assure itself of a labor force. So I guess there certainly are other findings as well that might point in a different direction. But looking at those findings and reading those together, why don't they equal the position of opposing counsel and bully that 7D is met? Our position is they don't, Your Honor. Certainly there's no question, and I didn't catch all the 20, 23, 24, and 74. There may be others also. Sure. But it seemed to me that those dovetail with one another to equate to really what the regulation is talking about in 7D. It's our position that they don't, and here's why. There's no question, and it was undisputed both on summary judgment and at trial, that Bear Creek must recruit workers from outside of Medford to fulfill the needs for its peach and pear harvest season. There's no question about that, and the Court found that specifically in finding 23. But that doesn't answer the dispositive question of the statute as defined by the regulation and specifically subsection D that the Court focused on. The question there is, is this required? It doesn't focus on what the employer must do to get the workers there, but it's is the housing required to have the workers at the time and locations needed. So what's happened with plaintiff's argument is plaintiff's has conflated two distinct concepts. Is the recruiting necessary or is the housing necessary? And we certainly aren't before this Court to dispute, as we haven't at any point, that the recruitment is necessary, but that doesn't get you within the confines of subsection D because we also have specific findings, and this is really fundamental and gets to the heart of the language of the statute, finding number 72, Your Honor. Residing at Bear Creek's employee housing is optional. Bear Creek does not compel seasonal harvest employees to reside in employee housing. They may reside elsewhere if they choose, and some do. I'm sorry. Go ahead. But what's the reality in terms of the finances of the workers and the availability of alternative housing? Isn't it de facto required to live in the housing provided by Bear Creek? It's not, Your Honor, and that certainly wasn't the finding. The district court had ample evidence before it of those specific questions, and there is testimony in the record that is undisputed and that the district court relied on testimony by defendants' witnesses that, in fact, some people do live off-site. This is certainly not a record. Excuse me? The district court did find that nearly all of the employees resided on-site, correct? That is correct. And made findings also about the transportation and how that works. And I guess it seems to me that maybe what's happened in our conversation is that you're reading required in a very, very strict sense, whereas the regulation really talks about it not in the sense of you must live here or you cannot work for us, but rather in the sense of necessary in order for the employer to maintain the adequate workforce, which is a different kind of required. So I'm not sure even what the relevance is of saying that, literally, they could live somewhere else if they wanted to. Why is that even pertinent? I think that is exactly pertinent, Your Honor. Why? Because we have people, if the question is under the regulation, how you look at if it's required is if it's necessary to have the housing to maintain at all times and locations. And the district court was presented. Plaintiffs made the same argument before the district court, the same argument they make before this court, and the district court rejected that. We're here de novo, so we're getting to look at that all over again. And our position is that the district court got that right, and they got that right because we do have employees who are living elsewhere. The fundamental question of whether it's required we submit, in fact, should be the court's first inquiry because that's what the statute talks about. But required has a meaning of art in this regulation. Correct. And it doesn't mean literally that it's, I mean, involuntary is one of the options, but that's not really the option that anybody's talking about here. It's option D that's the primary focus, perhaps informed by B. But it really has to do with whether in the absence of this housing, would Bear Creek have an adequate workforce when and where it needs it? That's the question. Right. And that, we submit that the factual record, the findings or if this court looks at that de novo, you don't get there. What you get is that the recruitment was necessary, absolutely, but we don't have findings or the evidence to support that actually having them on site at Bear Creek Housing is necessary. And we know, in fact, and it's undisputed in the record, that you have workers who live off-site who can get there when the company needs them, who can go off to meals. They don't have to go eat in the cafeteria. That evidence is before the court as well. And while we don't know if it's a majority or minority, certainly the majority live on site. But they do that for their convenience. And that's almost all according to the district court. Pardon me, Your Honor? Almost all according to the district court. That is correct. That is correct. But the fact that not all of them do, I think, I think is important for this Court's consideration. And the fact that it is an option is important for this Court's consideration. Do you think there's a difference between necessary and required? You seem to be conflating the two concepts. I think if the court considers them as separate concepts, you still arrive at the decision that the district court did. Because the language of subsection D is specific and talks about necessary at the times and locations, which is, I think, why the court got to the on-call analysis and why defendants submitted that argument below. And certainly, and as we noted in our briefs, that is a position that Boley has taken consistently, except, interestingly, in its position before this Court, that what D means is on-call, where you have the hotel worker, you have someone working at the front desk, someone needs to check in at 2 a.m. You can't, the housing is therefore required and you can't deduct it. And that situation does not fit within the facts of this case. So if the court wants to treat required under the statute as defined, we work through the regulations and we don't dispute that's what we need to do, work through the regulations and subsection D particularly. Look at that, but look at that not just in a vacuum. I think the district court was very specific and measured in its findings and addressed really the whole relationship with the housing from where it starts with the recruitment, how do they get there, is it required, is it optional, clearly it's optional. Certainly the court found that the housing facilitates the recruitment, but we don't have a finding that it was necessary to the recruitment. And we know that, and that's accurate, because we have people who don't live in the housing who come to work there. While it may be a minority, there are some, and that's undisputed in the record. With regard to Judge Graber's comment about B, it's our position that that doesn't apply at all, and I think telling is the fact that the State of Oregon, through Voley, has submitted an amicus brief, but only on subsection D. They don't even address this Court on subsection B. This isn't a situation of travel as part of work. These people, as Judge Selna noted, are coming from Arizona to Medford, and that is where they reside during the harvest season. Is an on-call employee requirement the only circumstance that will satisfy subsection D? I don't think the court needs to reach to have that conclusion to affirm the district court. I think it's certainly the only, what we can submit to you is the only recognized situation by Voley. And it's the only one cited in section 46 of the findings. It is correct, Your Honor, and with that, that certainly is, the district court did note that and did agree with the defendant's position below that this refers to on-call workers, but I think that's not, again, if you look at that just in a vacuum, perhaps you get there, but if we're looking at the totality of the district court's findings on whether or not the housing was required, I think some of the other findings inform that the court did look just beyond is this just an on-call situation, which it wasn't. But are there or are there not circumstances other than on-call that would fit within subsection D? I don't know if that's answered. It certainly isn't answered in case law, as we know. Voley has only taken the position that this is an on-call position through its final orders. What's your position? Our position is that here, would these facts know? That the facts here do not, even we know these aren't on-call workers. Is there another? Would they still fit within D? And the answer to that is no under the facts of this case. May there be other situations? Absolutely possibly. But those don't exist here. Moving to the, if there's no further questions on the minimum wage. Sure. Defendants have appealed the district court's finding on the final paycheck. Again, there's no factual dispute nor the facts challenged here on appeal. There's no question that Bear Creek's practice was to pay its employees, its seasonal farm workers, the morning after their last day they performed work. It's the position, and why this is reversible error, is that Boley's regulation, particularly under these facts, commands a different result than the statute. And as we've stated in the brief, then deference is not required. This court should look at the statute as the district court did originally, because what Boley has done is defined what terminated means in a way that is a different and on the facts of this case, in fact, a stricter standard. Working statutes as a baseline require payment on the last day, period. Not the day after, but on the last day. That's the default position of the statutes. I'm not sure we have this finding on the 652.145, which is the statute at issue here. Your Honor, the language of the statute is immediately upon termination. And, in fact, that's the position Boley has taken. In its technical assistant manual, it has relied on the language from the statute. Wages are due immediately when the employment of a seasonal farm worker terminates, as opposed to the language of its regulation. And as we've stated in our brief, particularly under the facts here, we don't need to go beyond the record here. On the facts here, and as the district court first noted at summary judgment and then noted again in the findings and conclusions when the court changed its position, is that under the statute what Bear Creek did is a reasonable construction of the statute. Well, throughout, I mean, this isn't just about seasonal workers, although there is a separate statute for that. But it's the default position throughout Oregon law that the final wage payment is due on the last day of employment, not the next day. That's unethically true, and it has been true for a really long time. I lovely convoluted final paycheck statutes. You're right, Your Honor. And I think if we're looking at just the general provisions of 652.140 to be instructive, that when the employment terminates, then the paycheck is due under 652.140 sub 1, whether either the employer terminates or the employee terminates without notice. Then it's due the first business day after the termination. So we do still see some of that language about after termination. And immediately is not the same as the day after. Immediately is immediately. Correct. Which is 145. Correct. Yeah. So, and again, the point here is that looking at the facts on the record before the court, these standards immediately upon termination under the statute and last day worked under the regulation do not mean and they cannot mean the same thing. Here where, and the example we cited in the brief, which is what if you would have had a seasonal worker, what if one of these plaintiffs would have come to work on Monday, been sick on Tuesday and Wednesday, and on Thursday the employer discovers there was misconduct that should warrant termination. Well, by the regulation, the final paycheck is already late because the last day worked was Monday. So, therefore, under that sort of reasoning, under the plain language of the statute, we submit that the interpretation offered by a plaintiff, which is relying on BOLI's definition, went beyond the scope of the statute. And this is court well knows that in according deference to an agency they can't, the threshold question is have they gone beyond the rulemaking authority of the legislature. And here we posit that they have. Is it your position that BOLI's interpretation that upon termination means that day is unreasonable? That it conflicts with the statute. So, yes, that the, let me see if I got your question right, that BOLI's interpretation that upon termination means last day worked. Yes, because of this situation exactly where you can have or what the hypothetical we offer in the briefing, where you can have, sometimes that may mean the same thing absolutely and there's not a problem, but under the facts of this case and potentially other cases you can have a last day worked and then a break between when the employment actually terminates. I would add, and I see that my time is up. Go ahead. I would just add, as we have in the brief and as the district court found, particularly if this court is looking at this case de novo, that this is a situation where the district court found the employer acted it in faith. The whole point, the paychecks did not go until the next morning, was not to deprive the employees of their money, was not contrary or flew in the face of the policy of these regulations that they be paid promptly, but it was so they could calculate over time. The statute doesn't have a state of mind requirement in it, does it? You're correct. You're correct, Your Honor. Very good. Thank you very much. And we'll hear rebuttal. We have about two and a half minutes left. Thank you. Just addressing the late pay issue. First of all, the employer's interpretation really frustrates the purpose of the statute, which is to pay workers immediately. It would allow the delay of payment until the employer decides that it's going to terminate the relationship, and that's not what the requirement, that's not what the statute says. The Oregon Supreme Court on two occasions have equated the date of termination as being the last day worked, and indeed one of the cases that employer cites in its reply brief, the Santiago v. Tamarack Tree case, Magistrate Judge Schuble also equated the term when the employment terminates with when the work ends. So it's real clear that the judge got this right, and the rule, the hypothetical, first of all, isn't really in front of the court that the employer suggests. They call it hypothetical. Yeah. Beyond that, it just, it doesn't, the rule doesn't even apply in that situation because, you know, obviously the employment hasn't terminated on the last day of work. So it really doesn't, the rule doesn't even apply to that particular situation. Going back to the minimum wage argument, again, fundamentally the employer confuses whether the employer affirmatively requires the housing, and that's subsection 7a, condition of employment, with whether the housing is required according to the employer's business needs. And clearly under the facts of this case, the housing was required in order for the employer to muster the 250 to 350 workers that it needed on site for the short time the harvest occurred. The amicus brief makes clear that the 7d regulation is not limited simply to on call. It includes that, but it's not limited to that. And so that's their clear interpretation. The court should defer to that. Thank you, counsel. The case just heard will be submitted for decision. Thank you both for your arguments and your briefing. It was very helpful. And we'll proceed to the last case on the oral argument calendar, which is E versus Washington County. Thank you.
judges: Selna, Thomas, Graber